IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

|  |  |
|---|---|
| KEVIN LORDEMANN, as personal representative of the Estate of Bernard Lordemann, deceased,<br><br>Plaintiff,<br><br>vs.<br><br>RANDY SIBBITT, M.D., MONTANA INTERVENTIONAL & DIAGNOSTIC RADIOLOGY SPECIALISTS PLLC, and UNITED STATES OF AMERICA,<br><br>Defendants. | CV 24–59–H–DWM<br><br>ORDER |

On March 16, 2022, Bernard Lordemann died while a patient at the Veterans Affairs Medical Center at Fort Harrison ("Fort Harrison") in Helena, Montana. (*See generally* Doc. 1.) After his death, Lordemann's son, Kevin Lordemann ("Plaintiff"), sued the radiologist involved in Lordemann's case, Randy Sibbitt; Sibbitt's employer, Montana Interventional and Diagnostic Radiology Specialists, PLLC ("Radiology Specialists"); and the United States, alleging that a mass in Lordemann's liver should have been discovered in a June 2021 CT scan interpreted by Sibbitt, Sibbitt was not properly trained on the use of the diagnostic imaging software, and Fort Harrison providers neglected to timely work up elevated liver

1

function tests. (*Id.*) Subsequently, the United States filed a crossclaim against Radiology Specialists for contractual indemnification. (Doc. 32); Fed. R. Civ. P. 13(g). Radiology Specialists seeks to dismiss that crossclaim under Rule 12(b)(6) of the Federal Rules of Civil Procedure on the ground that there is no contractual indemnity. (Doc. 34.) That motion is denied.

## BACKGROUND

### I.     Lordemann's Care

On June 24, 2021, Lordemann went to the Emergency Department at Fort Harrison VA, complaining of abdominal pain. (Doc. 1 at ¶ 16.) He was evaluated by an ER physician who ordered, among other tests, a CT scan for a "possible kidney stone." (*Id.*) That CT scan was interpreted by Sibbitt, who reported Lordemann's liver to be "unremarkable." (*Id.* ¶ 17.) At his annual physical in August 2021, Lordemann was discovered to have elevated blood sugar levels, which led to a diagnosis of diabetes. (*Id.* ¶ 19.) In late December 2021 through early January 2022, Lordemann felt ill. (*Id.* ¶ 20.) When he went to Fort Harrison, his blood tests showed a dramatic increase in liver enzymes. (*Id.*)

On February 3, 2022, Plaintiff took Lordemann to Fort Harrison Emergency Department with complaints of body aches, fatigue, chills, and a recent fever. (*Id.* ¶ 21.) He also described firmness in his abdomen. (*Id.*) Dr. Lisa Murdoch performed a clinical evaluation that revealed a firm mass around his liver. (*Id.*)

2

Dr. Murdoch also ordered a CT "Angiogram of the Pulmonary Arteries and CT of the Abdomen and Pelvis with Contrast." (*Id.*) Radiologist Dr. Rajiv Roa interpreted the imaging studies, which revealed a large mass on Lordemann's left liver lobe, with numerous masses scattered throughout the rest of his liver. (*Id.* ¶ 22.) Dr. Roa also noted scattered bilateral pulmonary nodules. (*Id.*) Dr. Roa's concerns included primary liver cancer with metastasis to the lungs. (*Id.*)

On February 5, 2022, Lordemann was transferred to the VA Medical Center in Aurora, Colorado for a further workup, including a biopsy of his liver. (*Id.* ¶ 23.) Primary pathology from the biopsy revealed advanced liver cancer. (*Id.*) On February 12, 2022, he was flown back to Helena, and on February 14, 2022, he was told by health care providers at Fort Harrison that he had advanced stage liver cancer with metastases. (*Id.* ¶ 24.) He was given a poor prognosis and sent home with pain medication. (*Id.*)

On February 16, 2022, Lordemann received a telephone call from an individual with Quality Risk Management and the Chief of Staff at Fort Harrison. (*Id.* ¶ 25.) With Plaintiff on the call, they informed Lordemann that the CT scan from June 24, 2021 showed a mass was present in his liver. (*Id.*) They told Lordemann that if he wanted to pursue legal action, it would be against the radiologist and his employer, who had contracted with the VA to provide radiology services. (*Id.*) On March 8, 2022, Lordemann was readmitted to Fort Harrison.

(*Id.* ¶ 27.) His health continued to deteriorate and, on March 16, 2022, he died at age 76. (*Id.* ¶¶ 27–28.) His Certificate of Death lists the cause of death as "[l]iver malignancy." (*Id.* ¶ 30.)

## II. Radiology Specialists' Contract with the VA

On March 24, 2021, Radiology Specialists entered into a contract with the VA "to provide board certified interventional/diagnostic radiologists at the Fort Harrison-VA [Medical Center] to interpret all imaging exams and perform interventional/diagnostic imaging procedures" for the period of April 1, 2021 to September 30, 2021 (the "Contract"). (Doc. 32 at ¶¶ 6, 8.) Sibbitt signed the contract as "owner/member" of Radiology Specialists. (*Id.* ¶ 6) The "Tort Liability" provision of the Contract states: "The Federal Tort Claims Act does not cover contractor or contract physician(s). . . . Any settlement or judgment arising from a contractor's (or contract physician/s) action or non-action shall be the responsibility of the contractor and/or insurance carrier." (*Id.* ¶ 9 (emphasis omitted).) Radiology Specialists also agreed to the provisions of 48 C.F.R. § 852.237-70, "Indemnification and Medical Liability Insurance," which states in relevant part:

> (a) It is expressly agreed and understood that this is a non-personal services contract as defined in Federal Acquisition Regulation (FAR) 37.101, under which the professional services rendered by the Contractor or its health-care providers are rendered in its capacity as an independent contract. . . . The Contractor and its health-care providers shall be liable for their liability-producing acts or omissions. The

4

> Contractor shall maintain or require all health-care providers performing under this contract to maintain, during the term of this contract, professional liability insurance . . . .

(*Id.* ¶ 10 (emphasis omitted).)

### III. Procedural History

On January 23, 2024, and May 9, 2024, Plaintiff filed written claims with the U.S. Department of Veterans Affairs. (Doc. 1 at ¶ 8.) Those claims were denied on July 16, 2024. (*Id.*); 28 U.S.C. § 2675 (exhaustion of administrative remedies requirement). On August 29, 2024, Plaintiff filed suit in this Court, alleging that that Sibbitt and the healthcare providers at the Fort Harrison violated the standard of care in their treatment of Lordemann. (*See generally* Doc. 1.) A preliminary pretrial conference was held on January 7, 2025, and trial is set for May 4, 2026. (*See* Docs. 22, 23.) On March 7, 2025, the United States filed its crossclaim for contractual indemnity against Radiology Specialists. (Doc. 32.) Radiology Specialists now moves to dismiss that claim. (Doc. 34.)

## ANALYSIS

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows

5

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Dismissal is appropriate "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017) (internal quotation marks omitted). Here, Radiology Specialists argues that the government has failed to state a contractual indemnification claim because the Contract does not contain indemnification language. The government disagrees, arguing that the responsibility shifting language in the Contract is sufficient to plead such a claim. The government is correct.

As a threshold issue, the parties appear to dispute whether state or federal law governs the interpretation of the Contract. Radiology Specialists argues its motion under Montana law, likely because the government's liability under the Federal Tort Claims Act is determined by state law, *see* 28 U.S.C. §§ 1346(b)(1), 2674. However, because the Contract was a government service contract entered into pursuant to authority granted by federal statute, it must be interpreted according to federal law. *See United States v. Seckinger*, 397 U.S. 203, 204–06 (1970); *Kennewick Irr. Dist. v. United States*, 880 F.2d 1018, 1032 (9th Cir. 1989) ("Federal law controls the interpretation of a contract entered pursuant to federal law when the United States is a party.").

As both parties recognize, the chief case concerning federal contractual indemnification language is *United States v. Seckinger*. In *Seckinger*, the Supreme Court considered an indemnification claim brought by the United States against an independent contractor. 397 U.S. at 204–06. The contract clause at issue provided, in relevant part, that the contractor "shall be responsible for all damages to persons or property that occur as a result of his fault or negligence in connection with the prosecution of the work." *Id.* at 208 n.9. The Court held that this clause required indemnity from the contractor on a comparative negligence basis for injury claims arising from the contract work. *Id.* at 215–16.

Here, the Contract states[1] that "[a]ny settlement or judgment arising from a contractor's (or contract physician/s) action or non-action shall be the responsibility of the contractor and/or insurance carrier." (Doc. 32 at ¶ 9 (emphasis omitted).) It also apparently invokes the following regulatory language: "The Contractor and its health-care providers shall be liable for their liability-producing acts or omissions." (*Id.* ¶ 10 (citing 48 C.F.R. § 852.237-70) (emphasis omitted).) This language is sufficient under *Seckinger* to state a claim for contractual indemnity. *See also Barron v. United States*, 654 F.2d 644, 648–49 (9th Cir. 1981) (concluding that the United States "[wa]s entitled to recover under

---

[1] Neither party has filed the actual contract. The analysis contained herein is based on the language of the Contract as referenced in the government's pleading. (*See* Doc. 32.)

7

its contract for indemnity" based on contractual language that "the contractor 'shall be responsible for all damages to persons or property that occur as a result of his fault or negligence'").

Radiology Specialists' contention that the language of the contract must be identical to *Seckinger* is unpersuasive. *Seckinger* does stand for the proposition that contracts with the government should be construed against the government as the drafter. 397 U.S. at 210. *Seckinger* also prevents the government for recovering for its own negligence unless the parties' mutual intent to permit such recovery appears "with clarity from the face of the contract." *Id.* at 212. However, neither of these holdings impact the fundamental question here: whether the United States has adequately *pled* a claim for contractual indemnification based on the Contract. Because it has, dismissal is not appropriate.

## CONCLUSION

Based on the foregoing, IT IS ORDERED that Radiology Specialists' motion to dismiss the United States' crossclaim (Doc. 34) is DENIED.

DATED this 9th day of May, 2025.

Donald W. Molloy, District Judge
United States District Court